### WEISSENTHANNER v. DODGE METALLIC CAP CO.

(Circuit Court, D. New Jersey. October 26, 1907.)

PATENTS—ANTICIPATION—BOTTLE STOPPERS.

The Weissenthanner patent, No. 801,281, for a sheet metal stopper for bottles, etc., having a securing flange provided with a tongue, and being weakened by slits adjacent to said tongue so that it may readily be ruptured and removed by means of the tongue, is void for lack of novelty and invention, having been anticipated by the Calleson patent, No. 708,528; the two devices differing, if at all, only in the degree to which the slits are extended.

In Equity.   On final hearing.

Mastick & Jones (Charles S. Jones, of counsel), for complainant.
Howson & Howson (Hubert Howson, of counsel), for defendant.

CROSS, District Judge.   The complainant, by its bill of complaint, charges the defendant with infringement of claims 4, 14, and 21 of patent No. 801,281, issued to him October 10, 1905, for a sheet-metal closure for bottles, jars, etc.   The claims involved in this controversy are as follows:

"A sheet-metal stopper having a circumferentially-integral flange adapted to secure the stopper to a receptacle; said flange being weakened in a vertical direction and also weakened in a direction extending circumferentially thereof, whereby when the flange is ruptured the stopper may be readily removed from the receptacle."

"A sheet-metal stopper having a circumferentially-integral securing-flange adapted to be bent into locking relation with a suitable shoulder on a receptacle; said flange being provided with a tongue and being weakened in a vertical direction adjacent to said tongue, whereby the flange may be ruptured and released from the locking-shoulder by means of the tongue, and said flange being weakened in a direction extending circumferentially thereof adjacent to said tongue, whereby when the flange is ruptured the stopper may be readily removed from the receptacle."

"A sheet-metal stopper having a circumferentially-integral securing-flange and a detaching-tongue integral therewith and forming a part thereof; said tongue being detachably connected with the adjacent parts of said flange, and said flange having a weakened line extending circumferentially thereof adjacent to said tongue, whereby the flange may be easily ruptured by the tongue and the stopper readily removed from the receptacle."

The patentee, in speaking of the prior art, and of the merits of his invention, uses the following language:

"As heretofore constructed, sheet-metal stoppers have been provided with continuous flanges having detachable connections; the intention being to form the stoppers of sufficiently thin material to enable them to be readily removed when the connecting portions of the flange are separated and to so dispose a detaching-tongue that a force applied to the tongue will release the flange and permit the stopper to be removed.   These stoppers, however, have failed for two principal reasons:   In the first place, in none of the prior devices is the construction such that the flange may be readily released by a pull on the tongue and the detachable connections thereof at the same time strong enough to effectively hold the contents of the vessel under pressure.   In the second place, in none of the prior devices is the construction such that the stopper may be readily detached from the bottle, even when the connected portions of the flange are separated.

"My invention has for an object to provide a construction whereby the stopper may be readily removed from the vessel by the ordinary user without special care or skill.   More particularly, the objects of the invention are to provide in a tongued and flanged stopper a construction whereby a comparatively slight force applied to the tongue may release a portion of the flange from the shoulder of the bottle, so that the stopper may be readily removed from the vessel.   Other objects of the invention will more fully appear from the following description:

"I have found that by weakening the flange of the stopper in a vertical direction, so that the flange may be easily ruptured, and weakening the flange also in a circumferential direction adjacent to the point where it is weakened vertically, the stopper may not only be easily released from its locking relation, but it may also be readily removed from the receptacle."

There are certain constructive features common to the above claims, namely, a circumferentially-integral securing-flange, which is vertical-

ly and circumferentially weakened by slots, whereby when the flange is ruptured the stopper may be readily removed from the receptacle. A rupture of the stopper flange is therefore an essential feature of its operation. It is unnecessary to consider the prior art at length, since the defendant rests its claim of anticipation upon patent No. 708,528, issued September 9, 1902, to one Christian A. Calleson, for a metal cap for bottles or jars, and more particularly upon the constructions shown in figures 5 and 6 of that patent. In speaking of his invention, Calleson says:

"The invention consists, essentially, in the novel means employed for severing the flange or side wall of the cap, whereby the same is loosened from its locking engagement with the bottle or jar neck, and to that end a tongue is formed either within the body of the cap or projecting from its side wall or flange, the base of which is located within the said side wall or flange, and one or more slits extended to the base of the tongue, thus leaving the flange severed, except at the base of the tongue, which portion is readily broken at will by bending the tongue outward away from the body of the cap."

And, again, with reference to the modifications shown in figures 5 and 6, he adds:

"Fig. 5 is a view of a cap-blank, showing the additional slits near the base of the tongue, as flaring away from each other to insure a wide break in the cap-flange or side wall. Fig. 6 is a side view of the cap formed from the blank shown in Fig. 5. * * *

"In the form shown in Figs. 5 and 6, the additional slits are denoted by 7 and 8, which slits are cut through the flange of the cap of an angle to each other so as to weaken a larger portion of the side wall or flange of the cap than where the parallel slits 5 and 6 are used. * * *

"A very strong but sufficiently brittle metal can be utilized where the breaking of the metal at the base of the tongue separates the side wall or flange of the cap, and it requires a very slight force to release a cap of this character.

"It is understood that the tongues and slits may be made in different shapes and sizes to suit different requirements, and that any number of tongues may be employed with their corresponding intermediate slits."

A drawing of figure 6 of the Calleson patent, as just referred to, and of figure 2 of the patent in suit, are given below:

*Calleson.*                    *Weissenthanner.*

 

A cursory glance shows not only their close similarity, but substantial identity. The complainant's claim to novelty consists largely in a weakening slot in the flange, extending circumferentially thereof. That this is true will be seen by the following quotation from the testimony of the complainant's expert.

"The Calleson patent fails to disclose the subject-matter of claims 4, 14, and 21 of the patent in suit, in that it neither shows nor describes the weakening of the flange of the stopper in a direction extending circumferentially thereof, so that the stopper may be readily removed from the receptacle when the flange is ruptured, which forms an essential feature of each of the said claims."

It is true that the complainant's expert also claims that there is a difference in their mode of rupturing the flange, but I do not think this view can be maintained. The office of the tongue in rupturing the weakened flange is essentially the same in either case. In both patents, it is clearly provided that the necks of metal intervening the tongue and the slots shall be broken so as to sever the flange, and that result, which is the declared purpose of both patents, is obtained in each in substantially the same way. The only distinguishing difference therefore, if any, between the two patents, will be found in the circumferential weakening of the flange as described in the patent in suit. When the complainant's application was pending in the Patent Office, the Calleson patent was cited as an anticipation. The complainant's solicitor, who, by the way, was his expert at the hearing of the case at bar, endeavored to avoid that reference by amending some of his claims, as follows: "The flange being weakened in a direction and to such extent as to permit the easy removal of the stopper"—and again: "To such extent that the stopper may be readily removed from the receptacle." With these and other like amendments, the solicitor claimed that his invention was clearly distinguishable from the Calleson patent. In his argument before the examiner, however, he used the following language:

"In the Calleson patent, the flange of the stopper is not weakened in a lateral or circumferential direction to such extent as to enable the stopper to be removed from the receptacle without the aid of a tool or implement. The only hint in the Calleson patent of a weakening of the flange in a lateral direction is found in the inclined slots 7 and 8 of Figs. 5 and 6. These slots, however, will not permit the stopper to be removed from the receptacle by the fingers."

Apparently, therefore, the imperfection that the complainant saw in the Calleson patent was that the weakening of the flange, which, by the way, he admits was in a lateral or circumferential direction, was insufficient in extent to enable the stopper to be readily removed; but the objection thus made, and which was the main, if not the only, distinguishing difference between it and the pending application, was clearly one of degree, and one for which a remedy by elongation of the slits would suggest itself to any practical man. The complainant having admitted to the patent examiner that the Calleson flange was weakened circumferentially, it does not lie in his mouth at this time to gainsay such admission. He argued that the Calleson flange was not sufficiently weakened in a lateral or circumferential direction to be efficient, but he did not, and could not, maintain that it was not thus weakened. Calleson, however, as already stated, in referring to figures 5 and 6 of his patent, says that the slits are shown as flaring away from each other to insure a wide break in the cap-flange; and, again, it is understood that the tongues and slits may be made in different

shapes and sizes to suit different requirements. It is perhaps true that the Calleson slits are not circumferential to the extent that the Weissenthanner slits are, but, if so, the difference is unimportant, it is not one of substance, but of degree or proportion, and one for which a remedy would apparently suggest itself to anybody, and which, as a matter of fact, was suggested by Calleson himself, as has already been shown. Upon this point the defendant's expert says:

"I am decidedly of opinion that this increase in extent or length of the circumferential or longitudinal weakening slits of the construction shown in the Weissenthanner patent does not constitute or involve any substantial mechanical novelty whatever, but merely a variation in degree or amount of the weakening which is provided for in the Calleson patent, and the degree or amount of which will depend upon the judgment of the constructor, or may be determined by test for the purpose of ascertaining what length or extent is most desirable in practice, if a construction of this character should be adopted."

Furthermore, in answering the complainant's argument, in support of the above amendments to his claims, the examiner said:

"In applying the reference (Calleson) to the claims, the examiner considers the curved cuts of the reference as the equivalent of either a horizontal or a vertical cut, or both combined."

It is obvious, I think, that the Calleson slits are circumferential; but, if not, they are, as the examiner said, an equivalent of the slits of the patent in suit. Moreover, it is manifest that, if they were extended as Calleson himself suggested they might be in order to secure a wider break, they must be extended circumferentially, since to extend them upwardly would not only not insure a wider break, but would of necessity absolutely destroy the cap as a cap, for in that case the slits would extend on and over the top of the cap, and the cap would no longer be a stopper, or discharge the function of a stopper. Notwithstanding the above views of the examiner, he subsequently, after a personal interview with the complainant's solicitor, allowed the patent; in doing so, however, he apparently either reversed himself, or became confused over the meaning of the words "extending circumferentially thereof," as applied to the slits in the flange, and incorporated in the amended claims. I think the complainant's patent must be held invalid for want of novelty and invention.

In the view I have taken, it is unnecessary to consider the question of infringement. It is sufficient to say, in this connection, that the defendant is manufacturing under the protection of patent No. 829,856, issued to one William H. Dodge, which patent, in my opinion, does not infringe complainant's, but far more closely follows the Weissenthanner patent, No. 663,480.

The bill will be dismissed, with costs.